No. 20-10150

In the

# United States Court of Appeals
## for the Eleventh Circuit

Ricky Johnson,

*Appellant*,

v.

Sharon Lewis, et al.,

*Appellees.*

On Appeal from the United States District Court for the
Middle District of Georgia, Macon Division.
No. 5:16-cv-453 — Hon. Tilman E. Self, *Judge*

## BRIEF OF APPELLEES DR. SHARON LEWIS, DR. THOMAS FERRELL, AND WARDEN GLEN JOHNSON

Christopher M. Carr
  *Attorney General of Georgia*
Kathleen M. Pacious
  *Deputy Attorney General*
Roger A. Chalmers
  *Senior Asst. Attorney General*
Ellen Cusimano
  *Assistant Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3597
ecusimano@law.ga.gov

*Counsel for Appellees*

Johnson v. Lewis, No. 20-10150

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Bryson, Homer, Defendant/Appellee;

Carr, Christopher M., Counsel for Defendants/Appellees;

Chalmers, Roger, Counsel for Defendants/Appellees;

Chaudhary, Ayaz, Defendant/Appellee;

Curry, Stephen, Counsel for Defendants/Appellees;

Cusimano, Ellen, Counsel for Defendants/Appellees;

Ferrell, Thomas, Defendant/Appellee;

Hyles, M. Stephen, United States Magistrate Judge;

Johnson, Ricky, Plaintiff/Appellant;

Lewis, Sharon, Defendant/Appellee;

Marler, Kevin, Co-Defendant/Co-Appellee;

Mohammed, Defendant/Appellee;

Pacious, Kathleen, Counsel for Defendants/Appellees;

Rajavouri, Derek, Counsel for Co-Defendant/Co-Appellee

Self, III, Tilman, United States District Judge; and

Stay, Ronald J., Former Counsel for Defendants/Appellees.

/s/ *Ellen Cusimano*
Ellen Cusimano

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument in this case. The facts and legal arguments are adequately presented in the briefs, and oral argument would not significantly aid the decisional process.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ................................................ i

Table of Authorities ................................................................... iv

Statement of Issues ..................................................................... 1

Introduction ............................................................................... 3

Statement of the Case ................................................................. 4

    A. Factual Background ........................................................... 5

        1. General Information About HCV ................................... 5

        2. Department of Corrections' HCV Treatment Policy ....... 6

        3. Johnson's HCV Treatment ............................................ 7

        4. Johnson's Grievance ..................................................... 11

    B. Proceedings Below ............................................................ 12

        1. Johnson's Claims ......................................................... 12

        2. Johnson's Motions to Amend ....................................... 13

        3. Johnson's Discovery Requests ...................................... 13

        4. Re-Opening of Discovery .............................................. 15

        5. Expert Report of Dr. Trooskin ..................................... 15

        6. Motion for Summary Judgment .................................... 16

    C. Standard of Review ........................................................... 17

Summary of Argument ................................................................ 18

Argument ................................................................................. 22

# TABLE OF CONTENTS
## (continued)

Page

I.  The district court correctly granted summary judgment to
    Dr. Lewis, Dr. Farrell, and Warden Johnson .................... 22

    1.  Warden Johnson and Dr. Lewis did not act with
        deliberate indifference.................................... 23

    2.  Dr. Ferrell did not act with deliberate indifference...... 26

    3.  Qualified immunity protects Warden Johnson, Dr.
        Lewis, and Dr. Ferrell. .................................. 29

II. The district court correctly ruled on the five procedural and
    discovery issues identified by Johnson............................... 31

    A.  The district court did not abuse its discretion in
        dismissing Johnson's first motion for leave to amend as
        moot. ................................................... 32

    B.  The district court did not abuse its discretion in denying
        Johnson's motion to compel the production of privileged
        communications........................................... 33

    C.  The district court did not abuse its discretion in denying
        Johnson's motion to compel the production of medical
        documents/information about other inmates................ 35

    D.  The district court did not abuse its discretion in
        declining to consider the purported "responses" to
        Johnson's written deposition questions. ....................... 36

    E.  The district court did not abuse its discretion in
        declining to take judicial notice of Dr. Trooskin's expert
        opinions......................................................... 37

Conclusion.................................................... 40

## TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Bugge v. Roberts*,
    430 F. App'x 753 (11th Cir. 2011)………………………………25

*Burnette v. Taylor*,
    533 F.3d 1325 (11th Cir. 2008)………………………………22, 25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)……………………………………………...40

*Davis v. Scherer*,
    468 U.S. 183 (1984)……………………………………………19

*Estelle v. Gamble*,
    429 U.S. 97 (1976)……………………………………………..22

*Farmer v. Brennan*,
    511 U.S. 825 (1994)……………………………………………26

*Goldsmith v. Bagby Elevator Co., Inc.*,
    513 F.3d 1261 (11th Cir. 2008)………………………………32

*Grayson v. Warden*,
    869 F.3d 1204 (11th Cir. 2017)………………………………38

*Harper v. Lawrence Cty., Ala.*,
    592 F.3d 1227 (11th Cir. 2010)………………………………18, 22

*Harris v. Thigpen*,
    941 F.2d 1495 (11th Cir. 1991)…………………………….....26, 28

*Harrison v. Culliver*,
    746 F.3d 1288 (11th Cir. 2014)………………………………18

iv

*Hoffer v. Fla. Dep't of Corr.*,
    973 F.3d 1263 (11th Cir. 2020)........1, 3, 19, 22, 23, 26, 28, 29

*Hope v. Pelzer*,
    536 U.S. 730 (2002)......................................................30

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007)......................................31

*In re Rasbury*,
    24 F.3d 159 (11th Cir. 1994)........................................32

*Mann v. Taser Int'l*,
    588 F.3d 1291 (11th Cir. 2009)......................................22

*Miccosukee Tribe of Indians of Fla. v. United States*,
    516 F.3d 1235 (11th Cir. 2008)......................................17

*OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*,
    549 F.3d 1344 (11th Cir. 2008)......................................39

*Paez v. Sec'y, Florida Dep't of Corr.*,
    947 F.3d 649 (11th Cir. 2020).......................................18

*Rode v. Dellarciprete*,
    845 F.2d 1195 (3d Cir. 1988)........................................24

*Shipner v. E. Air Lines, Inc.*,
    868 F.2d 401 (11th Cir. 1989).......................................18

*Sloss Indus. Corp. v. Eurisol*,
    488 F.3d 922 (11th Cir. 2007).......................................32

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020)......................................25

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004)……………………………………31

*United States v. Jones*,
    29 F.3d 1549 (11th Cir. 1994)……………….…………………38

*United States v. Lanier*,
    520 U.S. 259 (1997)……………………………………………30

*Vinyard v. Wilson*,
    311 F.3d 1340 (11th Cir. 2002)……………………………………30

**Rules**                                                    **Page(s)**

F.R.C.P. 26………………………………………….......20, 34, 36, 38, 39

F.R.C.P. 31………………………………………………….......36

F.R.C.P. 37…………………………………………………..39

F.R.E. 201…………………………………………………21, 27

F.R.E. 702……………………………………………..…40

# STATEMENT OF ISSUES

1.    In *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263 (11th Cir. 2020), this Court held that monitoring the condition of inmates with Stage 1 Hepatitis C (as opposed to giving them drug treatments) does not violate the Eighth Amendment.  Here, the plaintiff is an inmate with Stage 1 Hepatitis C, and the defendants enrolled him in a chronic illness clinic and provided him with multiple consultations with a specialist to monitor the progression of his disease.  Did the district court correctly grant summary judgment to the defendants on the ground that they were not deliberately indifferent to the plaintiff's disease?

2.    Did the district court abuse its discretion when it denied the plaintiff's first motion for leave to file an amended complaint as moot, but simultaneously granted the plaintiff's second motion for leave to file an amended complaint?

3.    Did the district court abuse its discretion in declining to require the defendant to submit a more detailed privilege log when the defendant had already disclosed that all withheld communications are: "(a) solely between the undersigned counsel … and his clients, and no one else; (b) directly concerning this lawsuit; and (c) which post-date the filing of this lawsuit"?

1

4.    Did the district court abuse its discretion in declining to consider responses to the plaintiff's written deposition questions when the plaintiff failed to file copies of the actual responses?

5.    Did the district court abuse its discretion in denying the plaintiff's request to take judicial notice of the contents of an expert report filed in a case in the Eastern District of Pennsylvania?

## INTRODUCTION

Appellant Ricky Johnson sued various prison officials for deliberate indifference under the Eighth Amendment for allegedly failing to treat his Hepatitis C ("HCV"). The district court ultimately granted summary judgment in the prison officials' favor. This Court should affirm under *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263 (11th Cir. 2020).

In *Hoffer*, the issue before this Court was whether the Florida Department of Corrections treated HVC-positive, Stage 1 and Stage 0 inmates with deliberate indifference by simply monitoring their HCV instead of giving them drug treatments. The Court concluded that it did not. This was because "the [department] isn't refusing or denying medical care to any HCV-positive inmate." *Id.* at 1272. To the contrary, it was providing those inmates with "some medical attention" by "diagnosing their illnesses, assessing their risk of future harm, and regularly monitoring and managing their disease progression," which is all the Eighth Amendment requires. *Id.* This Court went on to emphasize that even though the inmates were not receiving "the particular course of treatment that they and their experts want— or as quickly as they want it—[the department] isn't turning a blind eye." *Id.*

3

Just so here.  Johnson, as a Stage 1 HCV-positive inmate, received continual monitoring during his incarceration in state prison.  Indeed, he was enrolled in his prison's Chronic Illness Clinic and was given multiple appointments with a specialist for the specific purpose of monitoring his HCV.  While he may have wished for a drug treatment regimen (and while his specialist, at one point, considered giving him such a regimen), this treatment was not required—either under this Court's decision in *Hoffer* or under the Georgia Department of Corrections' own HCV policy.

This Court should therefore affirm the district court's grant of summary judgment to the prison officials.  Although Johnson also challenges various procedural and discovery rulings below, those rulings are subject to an abuse of discretion standard.  And Johnson cannot meet that high standard, so none of those other rulings mandate reversal either.

## STATEMENT OF THE CASE

Johnson sued Appellees Warden Johnson, Dr. Lewis, and Dr. Ferrell for deliberate indifference under § 1983 for allegedly failing to provide him with adequate HCV treatment.  The district court granted summary judgment in Warden Johnson, Dr. Lewis, and Dr. Ferrell's favor.  Johnson appeals that decision, as well as other procedural and discovery rulings, here.

### A. Factual Background

#### 1. General Information About HCV

HCV is a virus that, over a period of years, can cause a patient's liver to become inflamed. ECF No. 144-3 at 5. HCV has four different stages: Stage 1 indicates minimal fibrosis (i.e., scarring of the liver) and Stage 4 indicates high fibrosis. *Id.* It typically takes eight to ten years for a patient to proceed from one stage to the next. ECF No. 144-4 at 4. And if the patient abstains from alcohol (which is not permitted in GDC facilities) and certain types of medication, it is not uncommon for the progression of the disease to stop altogether. *Id.* at 5. Consequently, it is often not medically necessary for a patient in Stage 1 or Stage 2 to undergo treatment. *Id.*

HCV treatment has evolved dramatically over the years. ECF No. 144-3 at 6. Initially, HCV was treated with one drug with low success rates. *Id.* Treatment then evolved to a two-drug regimen with better cure rates. *Id.* Later, treatment evolved to a three-drug regimen with even better success. *Id.* All of these regimens, however, had several drawbacks. They caused unpleasant side effects and they consisted of daily doses over a lengthy treatment period (at least 24 weeks) in which little to no doses could be missed. EFC Nos. 144-4 at 6; 144-6 at 4.

Beginning in 2015, newer drugs called "direct acting antivirals" ("DAAs") were introduced, the best-known of which is Harvoni. ECF No. 144-3 at 6. DAAs have fewer side effects, better cure rates, and fewer contraindications. *Id.*

### 2. The Georgia Department of Corrections' HCV Treatment Policy

The Georgia Department of Corrections ("GDC") issued its first relevant HCV policy in 2012. ECF No. 144-3 at 6. Under that policy, HCV-positive inmates must be enrolled in the Hepatitis C Chronic Illness Clinic and receive regular testing. *Id.* at 25. Additionally, inmates with Stage 2, 3, or 4 HCV could potentially receive a triple-drug treatment regimen if they met certain criteria, including having sufficient time to complete the therapy (which, again, requires at least 24 weeks of uninterrupted daily doses and injections). *Id.* at 27. Before an inmate can be considered for HCV treatment, the inmate's doctors must submit a Hepatitis C Pre-Therapy Checklist, which includes lab work and test results. *Id.* at 3. This checklist must be approved by the inmate's clinician, GDC specialist, GDC regional pharmacist, and GDC medical director. *Id.*

In August 2016, GDC updated its policy to set forth a priority system for the use of the new DAAs. ECF No. 144-3 at 34–41.

6

### 3.   Johnson's HCV Treatment

Johnson was diagnosed with HCV in 2009.  ECF No. 144-7 at 12.  He did not, however, indicate any interest in receiving treatment until 2012, when he was incarcerated at Wilcox State Prison and was under the care of non-party physicians. ECF No. 144-4 at 7.  Those physicians referred Johnson to a gastroenterologist, Dr. Chaudhary, who saw Johnson in May 2012 and ordered a liver biopsy to assess the status of his HCV.  ECF No. 144-6 at 3.  The biopsy results showed that Johnson's HCV was at Stage 1, which indicated a low level of fibrosis and a "very mild" disease.  *Id.* at 4.  Based on these results, Johnson did not qualify for any treatment under GDC's policy.  *Id.*  However, knowing that Johnson had a litigious history, Dr. Chaudhary recommended that he return to see him for possible treatment. *Id.*

On March 14, 2013, Johnson was transferred to Ware State Prison ("the Prison").  ECF No. 144-4 at 6.  At that time, Warden Johnson was the Prison's warden,[1] Dr. Ferrell was the Prison's

---

[1] He was warden at the Prison from 2013 to the end of 2014.  ECF No. 144-5 at 2.  As the warden, he had "no direct involvement or supervision of inmate medical care."  *Id.* at 4.  He thus "had no knowledge of [Johnson's] medical conditions, his HCV status or treatment, or any need or desire to interfere with that treatment."  *Id.* at 5.

Medical Director, and Dr. Lewis was the statewide Medical Director for GDC.[2]  Johnson was first seen for his HCV at the Prison on April 1, 2013.  ECF No. 144-4 at 6.  At that time, Dr. Ferrell noted Johnson's HCV diagnosis, the fact that he had recently expressed interest in pursuing HCV treatment, and his past interest in having hernia repair surgery – an interest he reiterated upon intake at the Prison.  *Id.* at 7.  Dr. Ferrell also noted that Johnson's HCV lab results were several years old.  *Id.* at 8.  He therefore ordered updated labs, as well as a follow-up consultation with Dr. Chaudhary.  *Id.* at 9.  He also referred Johnson to the Prison's Chronic Illness Clinic for long-term testing and monitoring of his HCV.  *Id.*

During Johnson's follow-up consultation with Dr. Chaudhary on April 25, 2013, Dr. Chaudhary recommended that he begin a triple-drug regimen.  ECF No. 144-6 at 4.  The duration of that regimen would be 24 to 48 weeks (depending on Johnson's initial response to the drugs), and the regimen would involve injections and multiple oral medications each day.  *Id.*  Missing even a couple

---

[2] Dr. Lewis' position as GDC's Medical Director "does not involve direct patient care."  ECF No. 144-3 at 10.  As a result, she "had no involvement with, or personal knowledge of, the course or treatment of Johnson's HCV prior to becoming a Defendant in this lawsuit."  *Id.*

days of treatment could cause the treatment regimen to fail. *Id.* Thus, to undergo that therapy, Johnson would need to remain housed at the Prison for at least 24 weeks. *Id.*

Dr. Chaudhary discussed these issues with Johnson, who informed him that he was scheduled for a trip to county court in a few days. *Id.* at 5. Because that trip would result in Johnson missing an unacceptable number of doses, Dr. Chaudhary and Johnson agreed to follow-up with his treatment when he returned from county court. *Id.*

Dr. Ferrell saw Johnson soon after he returned from county court. ECF No. 144-4 at 10. At that time, Johnson's long-desired hernia repair surgery had been scheduled for October 2013. *Id.* Because of the pending surgery, the beginning of the triple-drug therapy was, out of necessity, deferred until after the surgery. *Id.*

On October 1, 2013, Johnson received the hernia surgery. *Id.* He returned to the Prison on October 8, 2013, and began what he described as a "pretty rough" and "tough" recovery. ECF No. 144-7 at 9. Dr. Ferrell saw Johnson several months later on May 28, 2014, after he had fully recovered from the surgery. ECF No 144-4 at 10. During that appointment, Johnson indicated a desire to begin the triple-drug treatment regimen. *Id.*

9

Dr. Ferrell therefore referred Johnson to Dr. Chaudhary, who saw Johnson on July 31, 2014. *Id.* At that time, the new generation of drugs (DAAs, such as Harvoni) were on the horizon. ECF No. 144-6 at 5. Because the DAAs promised a much higher cure rate, almost no side effects, a much shorter treatment duration, and a dosage requirement of only one pill per day rather than multiple pills and injections, Dr. Chaudhary and Johnson agreed not to pursue the triple-drug regimen and to instead wait for the arrival of the DAAs. *Id.* at 5–6. Dr. Chaudhary thus recommended that Johnson's HCV continue to be monitored and that he return the following year for consideration of a repeat liver biopsy to check on the progress of his HCV and to possibly start a DAA treatment. *Id.* at 6.

Dr. Ferrell then saw Johnson on February 4, 2015, at which time he noted Dr. Chaudhary's recommendation that treatment not be pursued at that time. ECF No. 144-4 at 11. He scheduled a follow-up appointment for Johnson with Dr. Chaudhary for July 2015. *Id.* Prior to that appointment, however, Johnson was transferred to a privately-owned prison. *Id.*

GDC does not direct or control medical treatment given to inmates incarcerated in private prisons. ECF No. 144-3 at 3. Instead, private prisons have their own medical staff to provide

10

the inmates with medical care.  *Id.*  Nevertheless, after this lawsuit was filed, Dr. Lewis reached out to individuals at the private prison "via email to encourage … treatment if it was medically necessary and justified."  *Id.* at 10.  She then exchanged several emails with co-Appellees about "[Johnson's] Hep C evaluation/treatment" because "[a] lawsuit has been filed."  ECF No. 164.  The private prison ultimately treated Johnson's HCV with DAAs in 2018.  ECF No. 144-7 at 11.

### 4.  Johnson's Grievance

On May 9, 2014 (while Johnson was still incarcerated in a state-owned prison), Johnson submitted a grievance complaining about an alleged lack of treatment for his HCV.  ECF No. 144-3 at 13.  Warden Johnson denied the grievance.  *Id.* at 20.  Warden Johnson testified that he did not, however, "have any personal knowledge of the facts underlying [the] grievance, nor did [he] have any involvement in investigating [the] grievance."  ECF No. 144-5 at 4.  Instead, he relied upon the recommendations of the Prison's medical staff in denying the grievance.  *Id.*; *see also* ECF No. 144-3 at 16–18 (medical staff members' recommendations to deny the grievance).

Johnson appealed the grievance denial, but the denial was upheld.  ECF No. 144-3 at 21–22.  Dr. Lewis's name is on the

denial of the appeal.  *Id.* at 22.  However, she "had no involvement in the review of Johnson's medical grievance appeal"—her name is on the grievance appeal response form solely "due to [her] position with the GDC."  *Id.* at 4.  She instead designates the review of grievance appeals to her medical staff.  *Id.*  While they sometimes consult with her in deciding appeals, they did not do so with Johnson's grievance appeal.  *Id.*

### B.  Proceedings Below

#### 1.  Johnson's Claims

Johnson sued Warden Johnson, Dr. Lewis, and Dr. Ferrell (and others) for allegedly failing to provide him with HCV treatment.[3]  ECF No. 1.  Initially, he sought to sue them for deliberate indifference under the Eighth Amendment, violations of the ADA, and conspiracy.  *Id.*  But the district court later granted Warden Johnson, Dr. Lewis, and Dr. Ferrell's motion to dismiss the ADA claims and conspiracy claims.  ECF No. 121.  The case then proceeded to discovery on Johnson's Eighth Amendment medical deliberate indifference claims.

---

[3] He also sued Dr. Chaudhary, but the district court dismissed all claims against him.  ECF No. 121 at 25.

### 2.    Johnson's Motions to Amend

Shortly thereafter, Johnson moved for leave to amend his complaint.  ECF No. 62.  He then filed a second motion for leave to amend two months later.  ECF No. 91.  The district court denied the first motion as moot, but granted the second motion because "justice requires that [Johnson] be granted leave to file a restated complaint."  ECF No. 92 at 1.  In its order, the district court explicitly stated that Johnson "shall have thirty (30) days from the date of this Order … to file a restated complaint."  *Id.* at 2. Johnson failed to do so.

### 3.    Johnson's Discovery Requests

During the discovery period, Johnson sent requests for, among other things: (1) inter-office communications about his HCV treatment, and (2) medical information about other inmates with HCV (including medical grievances and the number of inmates receiving HCV treatment).  ECF No. 134-1 at 3, 6–7.

In response to the first category of documents, Warden Johnson, Dr. Lewis, and Dr. Ferrell produced all non-privileged communications.  ECF No.134-2 at 4.  They later clarified that they had produced all non-privileged communications and that all withheld communications are protected by attorney-client privilege.  ECF No. 133-5.  Specifically, they informed the district

court that all withheld communications are: "(a) solely between the undersigned counsel for the State Defendants and his clients, and no one else; (b) directly concerning this lawsuit; and (c) which post-date the filing of this lawsuit."  ECF No. 151 at 3.

As for the second category of documents, Warden Johnson, Dr. Lewis, and Dr. Ferrell initially objected because the request "exceed[ed] the permissible number of document requests."  ECF No. 134-2 at 6.  They later objected because the requests were overly broad and irrelevant, and disclosure of the requested information is prohibited by the Health Insurance Portability and Accountability Act ("HIPAA").  ECF Nos. 141-1 at 3 and 151 at 3.

Johnson then filed a motion to compel, *inter alia*, these two categories of documents, ECF No. 133, which the district court denied, ECF No. 153.  Regarding the first category, the district court concluded that the withheld communications "are protected by attorney client privilege" and that "Defendants are not required to produce a privilege log."  ECF No. 153 at 4.  Regarding the second category, the district court concluded that Johnson's request for other inmates' grievances was overly-broad and that his request for information about the number of inmates receiving HCV treatment was irrelevant and violated HIPAA.  *Id.*

### 4.  Re-opening of Discovery

The district court later re-opened discovery so that Johnson could send written deposition questions to three non-party physicians.  ECF No. 153.  The district court specifically instructed him to "submit his questions to the non-parties" within 28 days, and that "[a]ny responses to those questions must be filed."  *Id.* at 2, 6.

Within that 28-day period, however, Johnson did nothing but file his proposed questions.  ECF Nos. 160-1 and 160-2.  The district court interpreted this as a request to "submit [Johnson's] written deposition questions for him," which it declined to do. ECF No. 171 at 9.

Several weeks later, Johnson filed a handwritten document that quoted portions of the non-parties' purported responses.  ECF No. 173.  Johnson never, however, filed a copy of the non-parties' *actual* responses.  The district court therefore declined to consider the responses, noting that it "has no way to determine the truth of [Johnson's] recitation of [the non-parties'] 'responses' [Johnson] presents in his own filing."  ECF No. 181 at 4.

### 5.  Expert Report of Dr. Trooskin

During the re-opened discovery period (which had been re-opened only to allow written deposition questions), Johnson also

15

asked the district court to take judicial notice of an expert report from Dr. Stacey Trooskin, ECF No. 158-3 at 45, that had been filed in the United States District Court for the Eastern District of Pennsylvania, and to "consider" the report at the summary judgment stage. ECF No. 159. In the report, Dr. Trooskin recounted the history of HCV treatment and opined that DAAs should be used to treat all HCV patients, regardless of their fibrosis score. ECF No. 158-3 at 46–47.

The district court denied Johnson's motion, explaining that "while the Court may take judicial notice that the expert report was filed in [the Pennsylvania case], the Court may not take judicial notice of the expert's opinions." ECF No. 171 at 5. The district court also explained that, to the extent Johnson was attempting to use the report as expert evidence, his attempt was improper because he failed to properly disclose Dr. Trooskin as an expert under Rule 26. *Id.* at 6.

### 6.  Motion for Summary Judgment

Warden Johnson, Dr. Lewis, and Dr. Ferrell moved for summary judgment on Johnson's remaining medical deliberate indifference claims. ECF No. 144. They argued that no constitutional violation occurred and that, alternatively, they are protected by qualified immunity. *Id.* The district court ultimately

granted the motion.  ECF No. 171.  In doing so, the district court concluded that:  Dr. Lewis and Warden Johnson did not have subjective knowledge of Johnson's serious medical need and Dr. Ferrell reasonably responded to Johnson's HCV diagnosis.  *Id*. The district court declined to address qualified immunity.  *Id*. at 9.

Johnson appeals the district court's grant of summary judgment here.[4]  He also appeals the district court's decisions on first motion for leave to amend, motion to compel, request to consider the purported responses to his written deposition questions, and motion to take judicial notice.

### C.  Standard of Review

A district court's grant of summary judgment is reviewed *de novo*, applying the same standard as the district court and viewing all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).

---

[4] In his brief, Johnson also purports to challenge the district court's motion for summary judgment with respect to Dr. Chaudhary.  Johnson Br. at 41 (stating that "[t]he district court erred in granting summary judgement [sic] in favor of Def. Chaudhary").  But Dr. Chaudary was dismissed as a defendant at the outset of the case.  ECF No. 121 at 25.

17

An abuse of discretion standard applies to rulings on a motion for leave to amend (*Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir. 1989)), motion to compel (*Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014)), and motion to take judicial notice (*Paez v. Sec'y, Florida Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020)).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's grant of summary judgment to Warden Johnson, Dr. Lewis, and Dr. Ferrell because Johnson has failed to establish that they acted with deliberate indifference to his HCV diagnosis.  Prison officials act with deliberate indifference when they: (1) have subjective knowledge of a risk of serious harm; and (2) disregard that risk by conduct that is more than gross negligence.  *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010).  The record shows that Warden Johnson and Dr. Lewis had no actual knowledge of Johnson's HCV condition prior to the filing of this lawsuit.  While both individuals signed off on Johnson's grievance, they were not actually involved in the grievance process and instead relied on their staff to assess and rule on the grievance.

As for Dr. Ferrell, the record shows that he knew about Johnson's HCV condition but responded to it by providing

reasonable, adequate medical care.  Specifically, he enrolled Johnson (who, at the time, was Stage 1) in the Prison's Chronic Illness Clinic so that his HCV could be monitored, and he arranged multiple consultations between Johnson and Dr. Chaudhary.  This is all Dr. Ferrell was required to do under GDC's policy.[5]  And this Court recently held in *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020), that this type of medical attention does not amount to deliberate indifference.  This Court should therefore affirm the district court's grant of summary judgment in Warden Johnson, Dr. Lewis, and Dr. Ferrell's favor.

Johnson also appeals five of the district court's rulings on various procedural and discovery issues.  But this Court should affirm all five rulings.  *First*, Johnson contends that the district court erred in denying his first motion to amend as moot.  Any error in denying that motion was, however, harmless because the court *simultaneously granted* Johnson's second motion to amend.

---

[5] Of course, even if a policy violation occurred (which Appellees deny), the violation of a policy does not automatically give rise to a constitutional violation.  *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

Johnson therefore received the exact relief he was looking for: the opportunity to recast his complaint.

*Second*, Johnson contends that the district court should have required Warden Johnson, Dr. Lewis, and Dr. Ferrell to submit a more detailed privilege log about the communications they withheld.  But Rule 26 requires only that the withholding party expressly assert the privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed … in a manner that … will enable other parties to assess the claim."  Warden Johnson, Dr. Lewis, and Dr. Ferrell met this requirement by stating that all withheld communications were "(a) solely between the undersigned counsel for the State Defendants and his clients, and no one else; (b) directly concerning this lawsuit; and (c) which post-date the filing of this lawsuit."

*Third*, Johnson contends that the district court improperly concluded that HIPAA protected his requests for: (1) medical grievances submitted by other inmates, and (2) the number of inmates receiving HCV treatment.  Yet the district court also found that those requests were, respectively, overly broad and irrelevant.  And Johnson failed to provide any legal argument as to why these alternative reasons were incorrect.

*Fourth*, Johnson contends that the district court should have considered the responses he received to his written deposition questions.  But the district court made it clear that Johnson was required to file those responses, which Johnson failed to do.  Johnson instead set forth—in his own handwriting—excerpts of the purported responses.  Because the district court had no way of verifying that the handwritten excerpts were authentic, it did not abuse its discretion in declining to consider them.

*Fifth*, Johnson contends that the district court erred in denying his motion to take judicial notice of the content of Dr. Trooskin's expert report, which was filed in a Pennsylvania district court case.  The law is well-settled, however, that district courts may take judicial notice of an adjudicative fact only if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned."  F.R.E. 201(b).  Dr. Trooskin's expert opinions on the standard of care for the treatment of HCV do not meet this test because they are not "indisputable."

For all of these reasons, this Court should affirm.

# ARGUMENT

## I. The district court correctly granted summary judgment to Warden Johnson, Dr. Lewis, and Dr. Ferrell on Johnson's medical deliberate indifference claims.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To prevail on a medical deliberate indifference claim, the plaintiff must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Only the second element (deliberate indifference) is at issue in this appeal.  Whether the defendants acted with deliberate indifference is a subjective inquiry, and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  To satisfy this inquiry, the plaintiff must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than gross negligence.  *Harper*, 592 F.3d at 1234; *see also Hoffer*, 973 F.3d at 1270 n.2 (noting that "the Supreme Court itself has likened the deliberate-indifference standard to 'subjective recklessness as used in the criminal law,'" and that "no matter

how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the … standard").

As this Court recently emphasized in a different HCV case, this deliberate indifference standard is "stringent." *Hoffer*, 973 F.3d at 1271, 1272 (noting that it is a "steep hill that deliberate-indifference plaintiffs must climb"). The district court correctly concluded that Johnson failed to meet this high standard with respect to his deliberate indifference claims against Warden Johnson, Dr. Lewis, and Dr. Ferrell. Warden Johnson and Dr. Lewis did not have "actual knowledge" of Johnson's HCV diagnosis. And Dr. Ferrell, who was aware of the diagnosis, provided Johnson with reasonable medical treatment. Alternatively, Warden Johnson, Dr. Lewis, and Dr. Ferrell are entitled to qualified immunity.

### 1. Warden Johnson and Dr. Lewis did not act with deliberate indifference.

The evidence in the record shows that Warden Johnson and Dr. Lewis lacked actual knowledge of Johnson's HCV diagnosis while he was at the Prison, with the result that they did not act with deliberate indifference. As warden of the Prison, Warden Johnson "had no direct involvement or supervision of inmate medical care," and he testified that he "had no knowledge of

[Johnson's] medical conditions." ECF No. 144-5 at 4. Likewise, as GDC's statewide Medical Director, Dr. Lewis was "not involve[d] [in] direct patient care." ECF No. 144-3 at 10. She therefore "had no involvement with, or personal knowledge of, the course or treatment of Johnson's HCV prior to becoming a Defendant in this lawsuit." *Id.*

Nevertheless, Johnson contends that both individuals had actual knowledge he was not receiving HCV treatment because he submitted a grievance about the non-treatment. Johnson Br. at 29, 36. But the record shows that both Warden Johnson and Dr. Lewis relied on their staff to assess and respond to the grievance and lacked personal knowledge of the facts underlying the grievance.[6] ECF Nos. 144-3 at 4, 16–18, 144-5 at 4. Their cursory, passive involvement in the grievance process does not establish the requisite "actual knowledge." *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988) (noting that the governor's awareness of the grievance the plaintiff filed with his office of administration is insufficient to establish personal involvement in,

---

[6] While Dr. Lewis' name was on the grievance appeal denial, she testified that her name is on all of the appeal responses due to her position with GDC. ECF No. 144-3 at 4. She did, however, personally review Johnson's grievance appeal, nor did her medical staff consult with her about the grievance appeal. *Id.*

and actual knowledge of, the conduct complained of by the
plaintiff).  While the medical staff who handled the grievance
certainly had knowledge of the facts underlying the grievance,
their knowledge cannot be imputed to Warden Johnson or Dr.
Lewis.  *See, e.g.*, *Bugge v. Roberts*, 430 F. App'x 753, 758 (11th Cir.
2011) (explaining that subjective knowledge "must be specific, as
… imputed or collective knowledge cannot serve as the basis for a
claim of deliberate indifference") (quoting *Burnette v. Taylor*, 533
F.3d 1325, 1331 (11th Cir. 2008)).

Johnson also points to actions Dr. Lewis took after he was
transferred to a private prison and after he filed this lawsuit—
e.g., she sent emails to individuals at the private prison and, once
he received treatment, she signed off on his checklist.  Johnson Br.
at 33.  But this argument fails because it shows that Dr. Lewis
obtained knowledge of his condition only after he filed this
lawsuit, and not when he was in GDC custody.  In any event, even
if the post-suit emails and checklist sign-off are sufficient to
establish "actual knowledge," Johnson still cannot prevail on his
claim against Dr. Lewis.  This is because the evidence shows that,
once she found out about Johnson's condition post-suit, she
reacted reasonably to the situation.  *See, e.g.*, *Swain v. Junior*, 958
F.3d 1081 (11th Cir. 2020) ("A prison official may escape liability

for known risks if [she] responded reasonably to the risk, even if the harm ultimately was not averted."). Specifically, she reached out to individuals at the private prison "via email to encourage such treatment if it was medically necessary and justified." ECF No. 144-3 at 10. Dr. Lewis was unable to do anything further because neither she nor GDC "directs or controls medical care for inmates in the custody of private prisons." *Id.* at 3.

For these reasons, this Court should affirm the district court's grant of summary judgment to Warden Johnson and Dr. Lewis.

### 2.    Dr. Ferrell did not act with deliberate indifference.

Unlike Warden Johnson and Dr. Lewis, Dr. Ferrell did have "actual knowledge" of Johnson's HCV condition. But the law is well-settled that prison officials may "be found free from liability if they responded reasonably to the [inmate's] risk." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). It is only when prison officials' actions are "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" that liability will exist. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see also Hoffer*, 973 F.3d at 1271 (explaining that "deliberate indifference is *not* a constitutionalized version of common-law negligence") (emphasis in original).

26

The record here shows that Dr. Ferrell's response to Johnson's HCV does not amount to deliberate indifference.  When Johnson arrived at the Prison, his HCV was "very mild" at Stage 1.  ECF No. 144-6 at 4.  Yet Dr. Ferrell immediately ordered updated labs, ordered a follow-up consultation with Dr. Chaudhary, and referred Johnson to the Prison's Chronic-Care Clinic for long-term testing and monitoring.  ECF No. 144-4 at 9.  This is exactly what Dr. Ferrell was required to do under GDC's policy.  ECF No. 144-3 at 25.  Although Dr. Chaudhary later decided "in an abundance of caution" to administer a three-drug regimen, that regimen never began due to Johnson's trip to county court and his hernia surgery.  ECF Nos. 144-4 at 10 and 144-6 at 5.  And after the surgery, Dr. Ferrell again referred Johnson to Dr. Chaudhary, who decided *with Johnson* that they would not pursue the three-drug treatment and would instead wait for DAAs to be released.  ECF Nos. 144-4 at 10 and 144-6 at 5–6.  Dr. Ferrell took note of this decision and scheduled a follow-up appointment between Johnson and Dr. Chaudhary in five months.  ECF No. 144-4 at 11.  Before the appointment could occur, however, Johnson was transferred to a private prison.  *Id.*

These facts show that Dr. Ferrell took multiple steps to ensure Johnson received treatment for his HCV, all in accordance

27

with GDC's policy.  This is not the type of "grossly incompetent, inadequate" conduct that "shock[s] the conscience" and gives rise to a deliberate indifference claim.  *Harris*, 941 F.2d at 1505.

This Court's recent decision in *Hoffer*, 973 F.3d 1263, is instructive.  There, a class of inmates challenged the Secretary of the Florida Department of Corrections' HCV treatment policy. The policy requires inmates at the Stage 2 level and above to be treated with DAAs, but only requires monitoring for inmates at Stage 0 or Stage 1.  *Id.* at 1272.  The district court concluded that this policy was unconstitutional and that the Secretary was required to treat Stage 0 and Stage 1 inmates with DAAs because there is no "medical reason … why [those inmates] should not be treated."  *Id.* at 1269.

This Court, however, reversed.  *Id.* at 1266.  It held that "the Secretary's approach to the treatment of F0-and F1-level inmates" was not "so reckless—so conscience-shocking—that it violates the Constitution."  *Id.* at 1272.  In reaching this conclusion, the Court explained that "the Secretary isn't refusing or denying medical care to any HCV-positive inmate.  He may not be providing F0-and F1-level inmates the particular course of treatment that they and their experts want—or as quickly as they want it—but he isn't turning a blind eye, either."  *Id.*  In other words, because the

Secretary "*is* providing 'some medical attention'" to Stage 0 and Stage 1 inmates (by "diagnosing their illnesses, assessing their risk of future harm, and regularly monitoring and managing their disease progression"), the policy satisfies the Eighth Amendment. *Id.* (emphasis in original).

This Court's decision in *Hoffer* thus stands for the proposition that the monitoring of Stage 1 inmates—like Johnson—is constitutionally adequate. And that is precisely what Dr. Ferrell did here. He enrolled Johnson in the Prison's clinic for monitoring and arranged multiple consultations with Dr. Chaudhary. While Johnson may have preferred different or quicker treatment, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's … course of treatment [fails to] support a [deliberate indifference] claim." *Id.* at 1273. This Court should affirm the grant of summary judgment in Dr. Ferrell's favor.

### 3. Qualified immunity protects Warden Johnson, Dr. Lewis, and Dr. Ferrell.

Alternatively, this Court should find that qualified immunity bars Johnson's deliberate indifference claims against Warden Johnson, Dr. Lewis, and Dr. Ferrell.

The doctrine of qualified immunity protects governmental defendants sued in their individual capacity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). To avail of the immunity, a defendant must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *Id.* The burden then shifts to the plaintiff to show that immunity is not appropriate. *Id.* To carry that burden, the plaintiff must show that the right asserted was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time of the incident gave the defendant "fair and clear warning" that his conduct with respect to the plaintiff was unlawful. *Id.* at 746. Liability attaches only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).

Here, Warden Johnson, Dr. Lewis, and Dr. Ferrell were clearly acting within the scope of her discretionary authority at all relevant times. The burden therefore falls to Johnson to show that qualified immunity is not appropriate. He cannot, however,

meet this burden because there is no pre-existing case law clearly establishing a violation in this case. Warden Johnson, Dr. Lewis, and Dr. Ferrell are therefore entitled to qualified immunity. The district court's grant of summary judgment can be affirmed on this alternative basis.

## II. The district court correctly ruled on the five procedural and discovery issues identified by Johnson

Johnson is also challenging the district court's rulings on the following five procedural and discovery issues: (1) the denial of his first motion for leave for file an amended complaint as moot, (2) the denial of his request for a privilege log, (3) the denial of his motion to compel medical information about other inmates with HCV, (4) the district court's decision not to consider so-called "responses" to his written deposition questions, and (5) the denial of his motion to take judicial notice of Dr. Trooskin's expert report.

An abuse of discretion standard applies to all five of these decisions. And as this Court has made clear, "abuse of discretion" is an "extremely limited and highly deferential" standard of review. *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007). It allows for "a zone of choice within which" the district court "may go either way." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). This means that the Court "cannot reverse

just because we might have come to a different conclusion had it been our call to make." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007); *see also In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) ("[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call.").

Johnson cannot overcome this high burden for any of the procedural and discovery rulings he is challenging on appeal.

### A. The district court did not abuse its discretion in dismissing Johnson's first motion for leave to amend as moot.

Johnson moved for leave to amend his complaint on October 19, 2017. ECF No. 62. Before the district court had a chance to rule on that motion, Johnson again moved for leave to amend his complaint on December 22, 2017—i.e., two months later. ECF No. 91. Because the second motion superseded the first motion, the district court correctly dismissed the first motion as moot.

Yet even *assuming arguendo* that the district court erred in dismissing the first motion as moot, that error was harmless. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1276 (11th Cir. 2008) (explaining that this Court "will not reverse if an error of the district court is harmless"). This is because the district

32

court granted Johnson's second motion, ECF No. 92, which gave him exactly what he requested in the first one: the opportunity to amend his complaint. In granting the second motion, the district court recognized that "justice requires that [Johnson] be granted leave to file a restated complaint," and that Johnson "shall have thirty (30) days from the date of this Order … to file a restated complaint." *Id.* at 2. Despite this order, Johnson failed to file a restated complaint.

As these facts make clear, the district court gave Johnson leave to file an amended complaint. Whether the district court did so by granting his first motion or second motion is irrelevant— what matters is that Johnson was given the relief he requested. Consequently, any error in dismissing Johnson's first motion for leave as moot was harmless and provides no basis for reversal.

### B. The district court did not abuse its discretion in denying Johnson's motion to compel the production of a privilege log.

During discovery, Johnson sought, *inter alia*, all inter-office communications about his HCV. ECF No. 134-1 at 3, 6–7. In response, Warden Johnson, Dr. Lewis, and Dr. Ferrell produced all non-privileged communications. ECF No.134-2 at 4. They later clarified to Johnson that all withheld communications are: "(a)

33

solely between the undersigned counsel for the State Defendants and his clients, and no one else; (b) directly concerning this lawsuit; and (c) which post-date the filing of this lawsuit." ECF No. 151 at 3. Johnson later moved to compel the production of a privilege log, but the district court denied his request. ECF No. 153 at 4.

The district court did not abuse its discretion in doing so. Rule 26 says that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged … the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed … in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." F.R.C.P. 26(b)(5)(A). That is precisely what Warden Johnson, Dr. Lewis, and Dr. Ferrell did: they expressly claimed that the withheld communications were attorney-client privileged and then provided enough details about the communications for any court to conclude that the privilege applies. Thus, while the district court certainly could have required the production of additional details, its decision not to do so does not amount to an abuse of discretion.

Even if the district court erred in not requiring a detailed privilege log, such an error was harmless. This is because Johnson's sole argument as to why he needed a privilege log is that it is "critical" to establishing a conspiracy. Johnson Br. at 15. The problem with this argument is that the district court considered and dismissed such a conspiracy claim at the beginning of the case. ECF No. 121 at 12. And Johnson does not provide any explanation for how the privileged emails could possibly affect his remaining deliberate indifference claims. Thus, the district court's decision not to require a detailed privilege log, even if erroneous, should not result in reversal.

### C.    The district court did not abuse its discretion in denying Johnson's motion to compel the production of medical information about other inmates.

Johnson also requested information about medical treatment given to other inmates, including: other inmates' grievances involving the denial of health care, the number of inmates who have received HCV treatment, and the number of inmates who have died in prison. ECF No. 153. Johnson appeals the district court's denial of his motion to compel this information—specifically, the district court's conclusion that HIPAA prevents the disclosure. Johnson Br. at 18.

Johnson's argument fails because the district court did not deny his requests solely because of HIPAA. It also denied his requests for the additional reasons that they are overly broad and are irrelevant to Johnson's medical deliberate indifference claims. ECF No. 153 at 3, 4. And the law is well settled that the scope of discovery extends only to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. Rule 26(b)(1). Here, Johnson's requests for all medical grievances and information about other inmates' HCV treatment fall short of this standard. Indeed, as the district court recognized, Johnson's claim for deliberate indifference "solely concerns his own treatment," meaning that information about other inmates' treatment is irrelevant. ECF No. 153 at 4.

### D. The district court did not abuse its discretion in declining to consider the purported "responses" to Johnson's written deposition questions.

The district court re-opened discovery so that Johnson could send written deposition questions to three non-party physicians. ECF No. 153; *see also* F.R.C.P. Rule 31(a)(1) (stating that "[a] party may, by written questions, depose any person"). In its order allowing the questions, the district court gave Johnson clear instructions to "submit his deposition questions to the non-

36

parties" and file "[a]ny responses to those questions" within 28 days.  ECF No. 153 at 2, 6.  Johnson failed to do so.  Instead, he filed a handwritten document two months after the deadline that set forth—in Johnson's own handwriting—purported excerpts from the non-parties' responses.  ECF No. 173.  Because Johnson failed to file the non-parties' actual responses, the district court was well within its discretion in declining to consider them at the summary judgment stage.[7]

### E. The district court did not abuse its discretion in declining to take judicial notice of Dr. Trooskin's expert opinions.

A district court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned."  F.R.E. 201(b).  Under this rule, the district court could have taken judicial notice of the fact that Dr. Trooskin's expert report was filed in a case in the Eastern District of Pennsylvania.  But that is not what Johnson requested.  He instead wanted the district court to take

---

[7] In any event, Johnson fails to explain how the purported responses, if considered, would result in a denial of Dr. Lewis, Dr. Ferrell, or Warden Johnson's motion for summary judgment.

judicial notice of the expert's opinions.  ECF No. 159.  An expert's subjective opinions is not, however, an appropriate subject for judicial notice.  *See, e.g.*, *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (explaining that judicial notice of factual findings from other court proceedings is generally inappropriate); *Grayson v. Warden*, 869 F.3d 1204 (11th Cir. 2017) (explaining that "even though a court may take judicial notice of a document filed in another court … to establish the fact of such litigation and related filings,' a court cannot take judicial notice of factual findings of another court").

To the extent Johnson was attempting to use Dr. Trooskin as an expert in this case, the district court correctly found that this too was improper.  Federal Rule of Civil Procedure 26 provides that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders" and must include the expert's written report in the disclosure.  Fed. R. Civ. P. 26(a)(2)(B).  The written report must contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them," a list of other cases where the expert has testified within the previous four years, and the statement of the compensation to be paid to the expert witness  Fed. R. Civ. P. 26(a)(2)(B).  Further, under Federal Rule of

Civil Procedure 37(c)(1), if "a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008).

Here, the district court ordered the parties to complete discovery on or before July 1, 2019 (after extending the deadline from June 17).  ECF Nos. 128, 130.  While the district court later reopened discovery for the limited purpose of allowing written deposition questions, it did not reopen discovery for any other purpose, and Johnson never requested that the district court reopen discovery to allow him to disclose an expert witness.  Nevertheless, Johnson filed his request for judicial notice on October 4, 2019—after the close of the discovery and after Warden Johnson, Dr. Lewis, and Dr. Ferrell had filed their motion for summary judgment.  Johnson thus failed to comply with the expert disclosure deadline and, in any event, has never submitted a written report that lists all of the items required under Fed. R. Civ. P. 26(a)(2)(B).  To permit Johnson to disclose an expert after the close of discovery and the dispositive motion deadline would

deprive Warden Johnson, Dr. Lewis, and Dr. Ferrell of their right to depose the expert, to challenge the expert's proposed testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, and to disclose an expert of their own.

For these reasons, the district court's decision not to consider Dr. Trooskin's report was well within the range of reasonable choices. This Court should therefore affirm the denial of Johnson's motion to take judicial notice.

## CONCLUSION

For the reasons set out above, this Court should affirm the judgment of the Middle District of Georgia.

Respectfully submitted.

/s/ *Ellen Cusimano*
Christopher M. Carr
  *Attorney General of Georgia*
Kathleen M. Pacious
  *Deputy Attorney General*
Roger A. Chalmers
  *Senior Asst. Attorney General*
Ellen Cusimano
  *Assistant Attorney General*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3597
ecusimano@law.ga.gov

40

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 9,172 words as counted by the word-processing system used to prepare the document.

/s/ *Ellen Cusimano*
Ellen Cusimano

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

I further certify that June 7, 2021, I will be mailing via the United States Postal Service a copy of this brief to the following non-CM/ECF participants:

Inmate Ricky Johnson
GDC # 1124129
Coffee Correctional Facility
P.O. Box 650
Nicholls, GA 31554

/s/ *Ellen Cusimano*
Ellen Cusimano